UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| PHYLLIS BALDWIN, | : | Case No. 3:17-cv-217 |
| --- | --- | --- |
| Plaintiff, | : | |
| vs. | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

**I.** **Introduction**

Plaintiff Phyllis Baldwin brings this case challenging the Social Security Administration's denial of her application for period of disability and Disability Insurance Benefits. She applied for benefits on January 6, 2012, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Scott R. Canfield concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The Appeals Council denied Plaintiff's request for review, and she filed a previous action in United States District Court for the Southern District of Ohio. *See Baldwin v. Comm'r of Soc. Sec.*, No. 3:15-cv-419, Doc. #s 8-9 (S.D. Ohio April 21, 2016). Upon the parties' Joint Motion for Remand, the Court vacated the Commissioner's decision and

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

remanded the case pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings. *Id*. Upon remand, ALJ Gregory G. Kenyon determined that Plaintiff was not eligible for benefits because she is not under a disability.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Reply (Doc. #13), and the administrative record (Doc. #s 6-7).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Kenyon's non-disability decision.

## II. Background

Plaintiff asserts that she has been under a "disability" since June 7, 2011. She was fifty-one years old at that time and was therefore considered a person "closely approaching advanced age" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(d). She has a high school education. *See id.* § 404.1564(b)(4).

### A. Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Kenyon that she has pain in her lower back, neck, and shoulders. (Doc. #7, *PageID* #719). She described her back pain as "sharp" and, on a ten-point scale, she rated it at ten. *Id*. The pain radiates down her left leg and is starting to go down her right leg as well. *Id.* at 720. Her legs are unstable and she has lost her balance and fallen a few times. *Id.* Her pain also causes problems with bending, sitting, and standing. *Id.* at 721. Plaintiff has tried many different types of

2

treatment—pain management, physical therapy, water therapy, injections. *Id*. Each helped at first but her pain never went away completely. *Id*.

Plaintiff explained that her neck pain is "throbbing." *Id.* at 722. On a ten-point scale, it is usually eight or nine. *Id*. She has trouble turning her head—"I get kind of dizzy and my head feels like … one of those wobble things." *Id*.

Plaintiff has pain in her neck and shoulders because of fibromyalgia. *Id.* at 726. The pain "can go from burning to stabbing to numbness like. It's just constantly there." *Id*. It is typically eight or nine on a scale from one to ten. *Id*. He fibromyalgia also causes her to have trouble sleeping. *Id.* at 726-27. She lies down for about eight hours but usually only gets two hours of good sleep. *Id.* at 727.

Plaintiff has carpal tunnel syndrome in both wrists but it is worse in her left wrist. *Id.* at 723-24. She has pain in her wrists, her finger, and her thumb. *Id.* at 723. She has difficulty opening or gripping things. *Id*. She sometimes needs help zipping zippers, buttoning buttons, and using a fork and knife. *Id.* at 724. The more she uses her hands, the worse they hurt. *Id.* at 733. She tried physical therapy, and it helped for a while when she first started having problems. *Id.* at 735. She has not had surgery because her sisters had it and it did not seem to help. *Id.* at 734.

Plaintiff experiences migraines every day. *Id.* at 727. They last most of the day. *Id*. Although, "I can sometimes use an icepack and it kind of calms it down, but it never goes away." *Id*. She generally starts every day with an icepack in the dark. If the migraine subsides a little bit, she is able to partially open the curtains. *Id.* at 733. Two or three times a week, she has to go back into her bedroom later in the day with an icepack

3

to lay down for three to four hours. *Id*. If she is having a really bad migraine, she has sensitivity to light and loud noises. *Id.* at 728.

Plaintiff has a history of hearing loss. *Id.* at 725. When she had surgery on a tumor, the surgeon went through one of her eardrums, causing it to rupture. *Id*. She cannot hear anything on that side. *Id*. She has not tried hearing aides because she was told they would not help. *Id.* at 726.

Plaintiff lives in a house with her husband. *Id.* at 718. On an ordinary day, she sometimes gets on her computer and plays games, watches television, and reads the bible. *Id.* at 731. She spends about two-thirds of the day reclining with her feet up because she has swelling in her legs. *Id*. She has a driver's license but, as of April 2016, no longer drives because she has problems with her balance. *Id*. at 718. She is unable to go to the grocery because she cannot stand and walk for that long. *Id.* at 732. When she goes to the doctor, she is worn out by the time she gets home and usually takes an hour nap. *Id*. She has difficulty getting in and out of the bath, but her husband installed handles that help. *Id.* at 730. He also takes care of most of the household chores. *Id*. Plaintiff does the laundry sometimes but needs her husband to lift the wet clothes to put them in the dryer. *Id.* Plaintiff estimated that she can lift two pounds. *Id.* at 728. She can stand for five to ten minutes, walk for a few feet, and sit for five to ten minutes. *Id.* at 729.

  **B.**  **Medical Opinions—Elaine M. Lewis, M.D., & Olga V. Pylaeva, M.D.**

Dr. Lewis reviewed Plaintiff's records on April 3, 2012. (Doc. #6, *PageID* #s 121-29). She opined Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently. *Id.* at 126. She can stand and/or walk for six hours in an eight-hour

4

day and sit for six hours. *Id.* Her ability push and/or pull is limited in both upper extremities to minimal use of hand controls. *Id.* at 126-27. Further, she is limited to frequently handling and fingering. *Id.* at 127. She can frequently stoop or crouch, occasionally crawl, kneel, and climb ramps/stairs, and never climb ladders, ropes, or scaffolds. *Id.* Dr. Lewis concluded that she is not under a disability. *Id.* at 128.

On August 21, 2012, Dr. Pylaeva reviewed Plaintiff's records and affirmed Dr. Lewis's assessment. *Id.* at 131-39.

### III. <u>Standard of Review</u>

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record

5

contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. <u>The ALJ's Decision</u>

As noted previously, it fell to ALJ Kenyon to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since June 7, 2011.

Step 2: She has the severe impairments of degenerative disc disease of the lumbar and cervical spine; fibromyalgia; carpal tunnel syndrome; and migraine headaches.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … with the following additional limitations: (1) occasional crouching, crawling, kneeling, stooping and climbing of ramps and stairs; (2) no climbing of ladders, ropes and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) occasional use of the upper extremities for pushing and pulling; (5) frequent use of the upper extremities for handling and fingering; (6) no concentrated exposure to loud noise; (7) limited to performing indoor work; and (8) limited to performing unskilled, simple, repetitive tasks."

Step 4: She is unable to perform any of her past relevant work.

Step 5: She could perform a significant number of jobs that exist in the national economy.

(Doc. #7, *PageID* #s 694-704). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 704.

## V. Discussion

Plaintiff contends that the ALJ erred his weighing of Dr. Lewis and Dr. Pylaeva's opinions resulting in a failure to accurately account for her hand-use limitations. Plaintiff asserts that the ALJ's decision "contains no application of the regulatory opinion weighing factors." (Doc. #8, *PageID* #1099) (citation omitted). The Regulations require an ALJ to consider and evaluate every medical opinion in the record. *See* 20 C.F.R. §

7

416.927(b)-(c). In deciding what weight to assign an opinion, an ALJ must consider the following factors: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. *Id.* at (c). "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us." *Id.* at (e)(2)(ii).

In the present case, the ALJ addressed at least one factor. He assigned Dr. Lewis and Dr. Pylaeva's opinion substantial weight "because their opinion is *consistent* with [Plaintiff's] level of impairment during the relevant period." (Doc. #7, *PageID* #702) (emphasis added); *see* 20 C.F.R. § 404.1527(c)(4) ("the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). The ALJ explained that Plaintiff's "carpal tunnel syndrome was medically improving with wrist splints and activity modification." (Doc. #7, *PageID* #702). He also previously explained that in August 2011, Plaintiff's treating physician instructed her to try wrist splints and if the pain did not improve by her next appointment, they would consider surgical evaluation. *Id.* at 700. In November 2011, Plaintiff reported that her carpal tunnel syndrome improved and there is no indication that she subsequently underwent surgical evaluation. *Id.*

But, Plaintiff asserts, although the ALJ assigned "substantial weight" to their opinions, he failed "to incorporate all of the manipulative limitations from the opinions of

8

Drs. Lewis and Pylaeva in his residual functional capacity finding" and failed to explain why he did not.  (Doc. #8, *PageID* #1100).  Both doctors opined that Plaintiff's ability to push and/or pull was limited in her upper extremities—more specifically, "hands limited to minimal use of hand controls."  (Doc. #6, *PageID* #s 126-27).  ALJ Kenyon, however, determined that Plaintiff could *occasionally* use her upper extremities for pushing and pulling.  (Doc. #7, *PageID* #698).

While "there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim," *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015), "the ALJ must meaningfully explain why certain limitations are not included in the RFC determination—especially when such limitations are set forth in opinions the ALJ weighs favorably."  *See Howard v. Comm'r of Soc. Sec.*, No. 3:14-cv-394, 2015 WL 8213614, at *4 (S.D. Ohio Dec. 9, 2015) (Newman, M.J.), *Report and Recommendations adopted*, 2016 WL 99114 (S.D. Ohio Jan. 7, 2016) (Rice, D.J.) (citing *Hann v. Colvin*, No. 12-cv-06234-JCS, 2014 WL 1382063, at *22 (N.D. Cal. Mar. 28, 2014) ("where an ALJ has already found a physician's opinions to be credible and concrete, an ALJ can err by omitting aspects of that physician's opinions from the RFC"); *Stoddard v. Astrue*, No. 3:09-cv-91, 2010 WL 3723924, at *1 (E.D. Tenn. Feb. 19, 2010); *Washington v. Colvin*, No. 13-1147-SAC, 2014 WL 4145547, at *3 (D. Kan. Aug. 19, 2014)).  Moreover, an ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Soc. Sec. R. 96-8p, 1996 WL 374184, at *7 (Soc. Sec. Admin. July 2, 1996); *see Kreze v. Berryhill*, No. 1:17-CV-01254, 2018 WL 3045097, at *8 (N.D. Ohio June 7, 2018), *Report and Recommendation adopted*,

2018 WL 3046474 (N.D. Ohio June 20, 2018)). In the present case, ALJ Kenyon does not explain why he rejected Dr. Lewis and Dr. Pylaeva's opinion that Plaintiff is limited to minimal use of hand controls. Such failure amounts to reversible error.

Indeed, the ALJ may have overlooked or ignored that the record-reviewing physicians' limited Plaintiff's use of hand controls. *See McHugh v. Astrue*, No. 1:10-CV-734, 2011 WL 6130824, at *5 (S.D. Ohio Nov. 15, 2011) ("When an ALJ fails to mention relevant evidence in his or her decision, 'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'") (quoting *Morris v. Sec'y of Health & Human Servs.*, Case No. 86-5875, 1988 WL 34109, at * 2 (6th Cir. Apr.18, 1988)). When summarizing Dr. Lewis and Dr. Pylaeva's opinions, the ALJ mentions that Plaintiff is limited to frequent handling/fingering but says nothing of limitations regarding hand controls.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[2]

## VI. **<u>Remand</u>**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's

---

[2] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Phyllis Baldwin was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.

July 27, 2018 *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).